# United States Court of Appeals
## For the First Circuit

No. 22-1304

UNITED STATES,

Appellee,

v.

AMY COLBURN,

Defendant - Appellant.

No. 22-1305

UNITED STATES,

Appellee,

v.

GREGORY COLBURN,

Defendant - Appellant.

Before

Gelpí, Kayatta, and Montecalvo,
Circuit Judges.

**JUDGMENT**

Entered: May 15, 2025

The government moves for summary disposition of these criminal appeals by Amy and Gregory Colburn, two of the nineteen parents charged in an indictment stemming from the "Varsity Blues" investigation into alleged fraudulent schemes designed to secure the defendants' children's admission to colleges and universities throughout the country. The Colburns entered conditional guilty pleas that reserved their right to appeal certain specified issues. The government argues that summary affirmance is warranted because the issues the Colburns have raised in their merits brief are either foreclosed by this court's decision in United States v. McGlashan, 78 F.4th 1 (1st Cir. 2023), or the terms of their plea agreements, or are unnecessary to resolve. We agree.

## BACKGROUND

### A. Indictment

The Colburns pled guilty to Count One of the Fourth Superseding Indictment, which charged them with conspiring to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349. In essence, the indictment alleged that the Colburns paid $25,000 to have an SAT proctor change their son's test answers in order to increase their son's test score.

As relevant here, the indictment alleged that the SAT is developed and administered by the College Board and Educational Testing Services, two nonprofit organizations headquartered in New York and New Jersey; that most selective colleges and universities in the United States require prospective students to submit standardized test scores (typically, SAT or ACT scores) with their applications; that the SAT tests and the scores students earn on the tests are the property of the College Board, and that those scores are a material part of the admissions process. In addition, the indictment alleged that the SAT administrators "are agents of . . . the College Board" who "owe a duty of honest services to th[at] organization" and "must typically certify that they will administer the test in accordance with the SAT coordinator's manual, that the SAT test is the property of the College Board, and that no one other than the student can open the test book and see the test content."

As to the specifics of the scheme, the indictment alleged that in late 2017, the Colburns agreed to direct a payment of $25,000 to Key Worldwide Foundation ("KWF"), a nonprofit corporation founded and operated by William "Rick" Singer. The payment, consisting of a $24,452.55 stock transfer[1] and a $547.45 check with "charitable contribution" noted in the memo line, was made in exchange for Singer arranging for Mark Riddell, the director of college entrance exam preparation at a private college preparatory school and sports academy in Bradenton, Florida, to pose as a test proctor who would secretly correct the Colburns' son's SAT answers. Singer instructed the Colburns to request testing accommodations so that, rather than taking the exam at his own high school, the Colburns' son could take the exam at a school in West Hollywood, California, whose director, Igor Dvorskiy, "a compensated standardized test administrator for . . . the College Board," had been "brib[ed]" by Singer to allow Riddell to correct the exam answers for the Colburns' son and another student. Singer executed the bribe by "caus[ing]" KWF to pay both Dvorskiy and Riddell for their role in "facilitating [the] cheating."

The Colburns' son took the SAT at the West Hollywood school on March 9, 2018, and the test proctor corrected his answers thereafter. A few days later, Dvorskiy sent the exam materials to the College Board in New Jersey via UPS. Singer then paid Dvorskiy and the proctor $20,000 each through KWF for their services for the Colburn's son and another student. The Colburns' son's corrected test score was ultimately sent to various colleges and universities as part of his applications.

---

[1] On the date of the stock transfer, KWF issued a letter to Gregory Colburn "falsely indicating that 'no goods or services were exchanged' for the purported donation."

Based on this conduct, Count One of the Fourth Superseding Indictment charged that the Colburns conspired to commit mail and wire fraud, in violation of 18 U.S.C. § 1341 and § 1343, and honest services mail and wire fraud, in violation of 18 U.S.C. § 1346, by using the mail and interstate wire communications in furtherance of a scheme "to defraud and to obtain money and property, to wit, . . . SAT . . . tests and test scores . . . and to defraud and deprive . . . the College Board . . . of their right to the honest and faithful services of their test administrators . . . through bribes and kickbacks."

## B. Motions to Dismiss

Thereafter, the Colburns joined in several motions to dismiss the Fourth Superseding Indictment, including one by co-defendant William McGlashan (Dkt. #1021), which echoed some but not all of the arguments the Colburns had made in a motion to dismiss a previous version of the indictment. The McGlashan motion argued as the Colburns' earlier motion did that standardized test scores did not constitute "money or property" for purposes of the mail or wire fraud statutes and that the indictment failed to adequately allege facts establishing a fiduciary duty for purposes of honest-services fraud. In addition, the McGlashan motion argued that the indictment did not adequately allege a scheme to obtain standardized tests. But the McGlashan motion did not make the alternative argument advanced in the Colburns' motion that the tests themselves, even if alleged to be the object of the fraud scheme, had no value as tangible property and therefore could not support a mail or wire fraud charge based on a property theory. The district court denied the motions.

## C. Plea and Appeal

Following the district court's denial of the motions to dismiss and the convictions of the first two co-defendants to proceed to trial, the Colburns both entered conditional guilty pleas to Count One. The terms of their Rule 11(c)(1)(C) plea agreements were identical, each stipulating that the defendant pled guilty to Count One but preserved the

> "right to appeal the denial of [the] Motion to Dismiss Count One of the Fourth Superseding Indictment, Dkt. 1021, only to the extent that the motion argued as follows: first, that test scores cannot, as a matter of law, constitute property for purposes of the mail or wire fraud statutes, and that, to the extent that standardized tests might be considered property under the mail or wire fraud statutes, the indictment did not adequately allege facts establishing a scheme to fraudulently obtain standardized tests in this case; and second, that the indictment did not adequately allege facts establishing that test administrators owed a fiduciary duty to testing companies in this case."

The agreements allowed the Colburns to withdraw their guilty pleas should their appeals succeed.

At the change-of-plea hearing, the Colburns admitted the test-taking allegations and the district court accepted the conditional pleas and sentenced each defendant in accordance with the plea agreements. Thereafter, the Colburns filed notices of appeal seeking review of "the denial of their Motion to Dismiss the Second Superseding Indictment (ECF 341) . . . , as well as the Motion to Dismiss Count One of the Fourth Superseding Indictment (ECF 1021 and 1022)." The appeals were stayed pending this court's decision in McGlashan.

After the decision in McGlashan issued, the Colburns filed their merits brief, and the government filed the instant motion for summary disposition.

## DISCUSSION

### A. Standard of Review

"'In reviewing a district court's denial of a motion to dismiss an indictment, we review legal questions de novo, any relevant factual findings for clear error, and the court's ultimate ruling for abuse of discretion.'" McGlashan, 78 F.4th at 5-6 (quoting United States v. Parigian, 824 F.3d 5, 9 (1st Cir. 2016)) (internal quotation marks omitted). "Whether the facts put forth in an indictment suffice to allege a federal crime is a question of law that we review de novo." Id. at 6. Where an indictment charges an offense based on alternate theories, only one of the theories need be found valid for the indictment to be legally sufficient. See id. at 6.

### B. McGlashan

As noted, the Colburns' appeals were stayed pending a decision in co-defendant William McGlashan's appeal. Like the Colburns, McGlashan was charged in Count One with conspiring to commit property and honest-services mail and wire fraud based on payments he made to Singer to have a standardized test proctor change his son's test answers, but he ultimately pled guilty to Count Seven, which charged him with a substantive violation of the wire fraud statute based on the same conduct and the same two theories of property fraud and honest services fraud. McGlashan, 78 F.4th at 5.

McGlashen entered a conditional plea agreement that preserved the same issues for review as the Colburns did--i.e., McGlashan preserved his right to appeal the denial of his motion to dismiss the Fourth Superseding Indictment (Dkt. #1021) to the extent it argued:

> "'[F]irst, that test scores cannot, as a matter of law, constitute property for purposes of the mail or wire fraud statutes, and that, to the extent that standardized tests might be considered property under the mail or wire fraud statutes, the indictment did not adequately allege facts establishing a scheme to fraudulently obtain standardized tests in this case; and second, that the indictment did not adequately allege facts establishing that test administrators owed a fiduciary duty to testing companies in this case.'"

McGlashan, 78 F.4th at 5 (alteration in original).

On appeal, we bypassed the argument that test scores are not "property" for purposes of federal wire fraud and found that the indictment adequately alleged that obtaining standardized tests was an object of the fraudulent scheme. Id. at 7-9. We further concluded that McGlashan's argument that the indictment did not allege a cognizable fiduciary relationship for purposes of honest services fraud was barred by the language in the conditional plea agreement. Id. at 9. We observed that the language of the agreement "include[d] a careful distinction between the preservation of factual and legal claims on appeal," which allowed McGlashan to argue that "the indictment did not adequately allege facts establishing that test administrators owed a fiduciary duty to testing companies," but precluded a legal argument that the statute does not reach informal fiduciary relationships. Id. at 10-11 (emphasis original). Because McGlashan did not offer any developed argument challenging the adequacy of the allegations that there was a fiduciary relationship between the test administrators and the testing companies and instead focused on the legal argument concerning the scope of the statute, the fact-based claim was deemed waived and the legal claim barred by the plea agreement. As a result, McGlashan's conviction was affirmed. Id. at 11.

## C. Appellants' Claims

In their merits brief, the Colburns challenge the adequacy of the property-theory allegations on three grounds, arguing that (1) SAT scores do not constitute property for purposes of the mail and wire fraud statutes, (2) the SAT tests were not adequately alleged to be an object of the fraud scheme, and (3) SAT tests do not constitute property for purposes of the mail and wire fraud statutes. As to the honest-services theory, the Colburns argue that the indictment failed to adequately allege that test administrators owed a fiduciary duty to the testing company both because "informal" fiduciary relationships fall outside the scope of honest-services fraud, and because the facts alleged were insufficient to establish that Dvorskiy owed a fiduciary duty to the College Board. The government argues that summary disposition is appropriate because (1) the property-theory challenges and the legal claim that "informal" fiduciary relationships are not covered by honest-services fraud are foreclosed either by this court's decision in McGlashan or the terms of the plea agreements, and (2) the fact-based challenge to the adequacy of the honest-services fraud allegations is meritless and/or unnecessary to resolve. These issues are addressed in turn.

### 1. Property-theory claims

First, as noted, McGlashan squarely held that the indictment adequately alleged that obtaining standardized tests was an object of the fraudulent scheme. 78 F.4th at 7-9. While that holding specifically applied to the substantive fraud count rather than the conspiracy count in issue in these cases, the relevant language in the two counts is identical. Thus, any claim by the Colburns that the indictment failed to adequately allege that the tests themselves were an object of the fraud conspiracy is foreclosed by this court's decision in McGlashan.

To the extent the Colburns argue that the tests themselves do not constitute property for purposes of the mail or wire fraud statutes, their claim is barred by the terms of their plea

agreements. As set forth above, the preservation of appeal rights in the plea agreements was limited to certain specified arguments raised in the "Motion to Dismiss Count One of the Fourth Superseding Indictment, Dkt. 1021[.]" While the Colburns argued in a separate motion that SAT tests do not constitute "property" for purposes of the mail and wire fraud statutes, that argument was not advanced in or incorporated by reference into the Motion to Dismiss the Fourth Superseding Indictment, nor is it included in the specified issues preserved for appeal.

Nevertheless, the Colburns argue that a remark the district court made at sentencing demonstrates that the right to appeal the issue was preserved. Specifically, the district court observed that it did not need to resolve objections to the Presentence Investigation Report's findings that the tests constituted "property" and that test administrators owed a fiduciary duty to the testing companies "because those are all legal matters which are currently under appeal." But absent ambiguity in the plea agreements' meaning, this comment by the court, made in the context of sentencing months after the plea agreements were negotiated and signed, is not relevant. See McGlashan, 78 F.4th at 10 n.3. The issues that are preserved for appeal are unambiguously and precisely framed by the plea agreement, and whether SAT tests constitute property is not one of them. The district court's comment at sentencing cannot provide an avenue for appeal foreclosed by the terms of the plea agreement. Having chosen to enter the conditional guilty plea, the Colburns must live with the bargain they made. Id., 78 F.4th at 10; see United States v. Adams, 971 F.3d 22, 31 (1st Cir. 2020).

With no open avenue to challenge the adequacy of the allegations that the Colburns conspired to obtain property in the form of SAT tests in violation of the mail and wire fraud statutes, as in McGlashan, it is unnecessary to determine whether SAT test scores constitute property for purposes of the mail and wire fraud statutes. McGlashan, 78 F.4th at 6.

### 2. Honest-Services Theory Claims

The Colburns next contend that the indictment inadequately alleged honest-services fraud because "informal" fiduciary relationships fall outside the scope of 18 U.S.C. § 1346, the honest-services fraud statute, and because it does not state sufficient facts to establish that Divorskiy had a fiduciary duty to the College Board. Because the challenges to the adequacy of the property-fraud allegations fail for the reasons discussed above, we need not determine whether the honest services theory was also valid. See McGlashan, 78 F.4th at 6. In any event, the arguments are unavailing.

First, to the extent the Colburns attempt to make a legal argument about the scope of § 1346, it is barred by the terms of their conditional plea agreements which dictated that they could only make specified arguments on appeal, and the issues preserved mirrored those set forth in co-defendant McGlashan's plea agreement. The preserved honest-services-related argument was that "the indictment did not adequately allege facts establishing that test administrators owed a fiduciary duty to testing companies[.]" In McGlashan, we found that the plea agreement's language carefully distinguished between legal and factual claims, and "plainly d[id] not allow for legal challenges to the honest services theory[.]" 78 F.4th at 11. There is no basis for distinguishing the agreements entered here.

The Colburns also make a fact-based challenge, arguing that the indictment failed to adequately allege honest services fraud because it did not include the word "fiduciary" or state facts that "establish[ed]" the existence of a fiduciary duty. But as the government points out, the existence of a fiduciary duty is not a statutorily-defined element of honest services fraud but rather derives from the Supreme Court's interpretation of the meaning of the term "honest services" in 18 U.S.C. § 1346, in construing it to avoid constitutional vagueness concerns. See Skilling v. United States, 561 U.S. 358, 405-07 (2010). The omission of an express allegation of a "fiduciary duty" is therefore not consequential. See United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010) (indictment need only charge the "statutorily defined elements of the charged crimes," not "judicial gloss").

To the extent the Colburns argue that the indictment fails to adequately allege facts "establish[ing]" a fiduciary duty, their argument fails because the indictment was required only to allege facts sufficient to give them notice of the basis for the specific offense charged, see id., and the indictment here did that by alleging that (1) Dvorskiy was a compensated test administrator for the College Board; (2) Dvorskiy, as a test administrator, owed a duty of honest services to the College Board; (3) SAT test administrators must typically certify that, inter alia, no one other than the student will "open the test and see the test content"; and (4) defendants carried out the fraud conspiracy by bribing test administrators to permit cheating, in violation of the administrators' duty of honest services to the College Board. See United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012) ("In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend and allows him to contest it without fear of double jeopardy"). To the extent the Colburns argue that the factual allegations were not legally sufficient to support an honest-services-fraud charge because the duty of honest services Dvorskiy was alleged to owe to the College Board was not within the reach of § 1346, they are attempting to make a legal challenge to the honest services theory and, as in McGlashan, that claim is barred by the plea agreements.

In sum, we conclude that the arguments raised on appeal are either foreclosed by this court's decision in McGlashan, barred by the plea agreements, or fail to present any substantial issue for review. The government's motion is granted, and the judgments are summarily affirmed. See 1st Cir. R. 27.0(c).

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Carol Elisabeth Head, Donald Campbell Lockhart, Kristen A. Kearney, Stephen Emanuel Frank, Justin David O'Connell, Alexia R. De Vincentis, Raquelle L. Kaye, Leslie Wright, Ian J. Stearns, William H. Kettlewell, Anthony E. Fuller, Debra Wong Yang, Andrew Neil Hartzell, Timothy Jeffrey Perla, Bruce M. Berman, George P. Varghese, William J. Lovett, Glenn A. MacKinlay, Mark David Smith, Jeremy Michael Sternberg, Gordon P. Katz, Laura Diss Gradel, Jonathan M. Albano, David Steven Schumacher, Patric Hooper